**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:05-cr-139 |
| | ) | |
| THOMAS PRIETO, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Before the Court is federal prisoner Thomas Prieto's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. [DE 135.] Because Prieto filed the motion well outside of § 2255's one-year statute of limitations, and because equity does not toll the limitations period, his motion is denied.

A jury convicted Prieto of possession with the intent to distribute more than 500 grams of a substance containing methamphetamine in violation of 21 U.S.C. § 841(a)(1). He was sentenced to 235 months in prison, and judgment was entered on October 2, 2007. The Seventh Circuit affirmed Prieto's conviction and sentence on December 2, 2008, and Prieto did not petition for a writ of certiorari to the United States Supreme Court. Now, on November 30, 2011 – almost exactly three years after the Seventh Circuit's decision – Prieto filed this § 2255 motion to vacate his conviction and sentence, alleging that was denied effective assistance of counsel at his jury trial, at sentencing, and on appeal.

A federal prisoner must file his § 2255 motion within one year from the date on which his judgment of conviction becomes final. 28 U.S.C. § 2255(f). A judgment becomes final for

purposes of § 2255 when the time expires for filing an appeal contesting the conviction. *See Clay v. United States*, 537 U.S. 522, 525 (2003). Here, the Seventh Circuit entered judgment denying Prieto's appeal on December 2, 2008. Because Prieto did not petition to the Supreme Court, his one-year clock began ticking on March 2, 2009 – or the date on which Prieto could no longer appeal his conviction to the Supreme Court. *See id.*; Sup. Ct. R. 13(1) (a writ of certiorari must be filed within 90 days of entry of judgment). Prieto's motion, filed November 30, 2011, is thus well outside § 2255's one-year window.

Prieto admits that his attorney informed him that the Seventh Circuit had affirmed his conviction and sentence on December 2, 2008. [DE 135 at 30.] Prieto argues that I should excuse his late filing, however, because his attorney failed to proceed with all his further appeal options – essentially either an *en banc* petition to the Seventh Circuit or a *certiorari* petition to the Supreme Court – even though Prieto had "asked that he kept [*sic*] going in the appeal process until all the options were exhausted and to inform him when all the options ran out if there was no success." [*Id.*]

Prieto states that throughout 2009 and 2010 he "patiently waited for contact from" his attorney, while also assuming that he "had an appeal going on" because "[o]ther inmates told him that it was normal that some appeals take years for a final decision." [*Id.*] Eventually, based on advice from another inmate, he sent this court a letter on June 20, 2011 requesting a copy of the docket sheet, which was promptly sent to him. He then sent another letter on July 5, 2011 requesting transcripts of his trial, and on August 25, 2011 I ordered the clerk to send the three-volume trial transcript to the federal facility where Prieto is housed for him to review.

Prieto argues that his late filing should be excused because: "Defendant is a Mexican

national who reads no english. He has no experience with the law and legal proceedings. He did not understand of [*sic*] the appeal process. Nor of the 2255 rules of one-year limitations. His education is of only primary shcool. Defendant really believed [his attorney] was working on appeals." [*Id*.]

Equity may toll the limitations period for § 2255 motions. *See United States v. Nolan*, 358 F.3d 480, 484 (7th Cir. 2004). But to do so, a petitioner must demonstrate that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance out of his control prevented timely filing. *Holland v. Florida*, 130 S.Ct. 2549, 2562 (2010); *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). Equitable tolling "is an extraordinary remedy reserved for truly exceptional situations." *Nolan*, 358 F.3d at 486. And while a lawyer's "egregious behavior" satisfies the standard, "a garden variety claim of excusable neglect" does not warrant equitable tolling. *Holland*, 130 S.Ct. at 2563-64. Whether a particular situation justifies equitable tolling is a fact-specific, case-by-case determination. *Id*.

The *Holland* case cracks the door open a tiny a bit for prisoners seeking relief from a blown statute of limitations. In *Holland*, a habeas petitioner sought to overcome the one year limitations bar based on equitable tolling because of his lawyer's actions. *See* 130 S.Ct. at 2564. The petitioner's attorney in *Holland*: failed to file the petitioner's § 2254 petition on time, despite the petitioner's many detailed letters stressing the importance of doing so; failed to do the research necessary to determine the proper filing date, despite the petitioner's letters that identified the applicable legal rules; failed to timely inform the petitioner that his appeal had been denied (thus starting the one-year clock), despite the petitioner's pleas for that information; and failed to communicate with the petitioner for years. *Id*. The Court suggested that the

attorney's behavior may have been egregious enough to warrant equitable tolling, but remanded that determination to the lower courts. *Id*.

The Court did, however, reverse the district court's finding that the petitioner failed to exercise "reasonable diligence" in pursuing his rights. *Id*. at 2565. The Court stressed that the petitioner wrote his attorney numerous letters seeking information and direction regarding the statute of limitations. Not only did his lawyer seem to fail him, but so too did the system as a whole. Holland repeatedly contacted the state courts, their clerks, and the Florida State Bar Association and sought to have his attorney removed from the case because of the attorney's inaction. *Id*. But he could not independently learn the status of his case because the state court would not communicate with him except through counsel. *Id*. at 2555-56. Moreover, the Court stressed that "the *very day* that Holland discovered that his AEDPA clock had expired due to [his attorney's] failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court." *Id*. at 2565 (emphasis in original).

This case is obviously much different from *Holland*. First, unlike the petitioner in *Holland*, Prieto did not diligently pursue his rights. The district court entered judgment on October 2, 2007, and the Seventh Circuit affirmed Prieto's conviction and sentence on December 2, 2008. Prieto claims that after his attorney informed him of the Seventh Circuit's decision, his attorney ignored a letter from Prieto and failed to communicate with him about the status of any further appeals. But, aside from his averments that he contacted his attorney, Prieto presents no evidence demonstrating his diligence in determining the status of his appeal until well after the limitations period had run. *See Tucker*, 538 F.3d at 735 (equitable tolling inapplicable because petitioner "had the burden to demonstrate his own diligence in pursuing his claim, but failed to

present any evidence in support of it") (citations omitted).

Even if his attorney ignored his requests for information and failed to inform him about his appeal, it was incumbent on Prieto to independently take steps to determine when his one-year clock began, as the petitioner did in *Holland*. *See id*. at 734 ("[The petitioner] must also show that he has diligently pursued his claim, despite the obstacle."). This is especially true here because Prieto makes no claim that his appellate attorney was helping with his § 2255 motion (indeed, he filed this motion *pro se)*, whereas in *Holland* the petitioner's attorney was appointed for the express purpose of assisting with postconviction relief. In any event, the general rule is that "attorney negligence is not extraordinary and clients, even if incarcerated, must 'vigilantly oversee,' and ultimately bear responsibility for, their attorneys' actions or failures . . . and, if necessary, take matters into their own hands." *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003). So even if his appellate attorney ignored his requests for information about the appeal process, he should have diligently taken steps to determine when the § 2255 limitations period began – instead, he did nothing. *See Montenegro v. United States*, 248 F.3d 585, 594 (7th Cir. 2001) (finding that petitioner failed to act diligently despite attorney's nonresponsiveness), *overruled on other grounds*, *Ashley v. United States*, 266 F.3d 671, 674-75 (7th Cir. 2001); *Mikel v. Superintendent*, 2010 WL 2732758, at *1-2 (N.D. Ind. July 8, 2010) (no equitable tolling where petitioner took no steps to learn the status of his appeal despite his attorney's failure to notify him of appellate action or commencement of limitations period); *Driver v. United States*, 2008 WL 111011, at *2 (N.D. Ind. Jan. 8, 2008) (same).

This is important because, unlike the petitioner in *Holland*, who despite his best efforts was unable to attain information regarding his appeal, nothing prevented Prieto from

determining the status of his appeal before the limitations period ran. Indeed, when Prieto finally contacted the district court clerk's office on June 20, 2011, the clerk promptly sent him a copy of his docket sheet, and when he again contacted the court requesting trial transcripts, I ordered that the three-volume trial transcript be sent to the federal facility where Prieto is housed for him to review. Prieto provides no explanation as to why he could not have taken this action before the limitations bar ran. Thus, while Prieto was clearly capable of writing the district or appellate court clerks to determine the status of his appeal, he waited until June of 2011 to do so – more than two years too late. *See Driver*, 2008 WL 111011, at *2 (no equitable tolling where petitioner "could have inquired of this court or the Seventh Circuit Court of Appeals as to the status of his appeal" but did not); *Griffin v. United States*, 2010 WL 2836273, at *4 (S.D. Ga. July 16, 2010) (petitioner failed to act with diligence where "despite counsel's unresponsiveness, [the petitioner] waited almost a year before seeking information directly from the circuit court regarding the status of his appeal").

Nor does Prieto's lack of familiarity with English support an argument for equitable tolling. While the Seventh Circuit has not explicitly addressed this issue, the majority of courts have held that language barriers are insufficient to toll the statute of limitations. *United States v. Galindo*, 406 Fed. Appx. 322, 324 (10th Cir. 2011) ("[L]ack of knowledge regarding the law, including ignorance resulting from language barriers, does not toll the statute of limitations."); *Yang v. Archuleta*, 525 F.3d 925, 929 (10th Cir. 2008) (the Tenth Circuit has "consistently and summarily refused to consider [lack of proficiency in the English language] as extraordinary, warranting equitable tolling"); *United States v. Montano*, 398 F.3d 1276, 1280, n.5 (11th Cir. 2005) (holding that being illiterate and/or having problems communicating in the English

language are insufficient grounds to permit equitable tolling); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002) (finding that prisoner's inability to understand English does not warrant tolling if the limitation did not prevent access to courts); *Garcia-Arrieta v. United States*, 2011 WL 2563084, at *3 (M.D. Fla. 2011) (denying equitable tolling argument for nearly three year delay in filing his section 2255 where prisoner argued he was indigent, spoke only Spanish, and had no knowledge of the law because "as numerous Courts have held . . . none of these reasons constitute an extraordinary circumstances").

The Second and Ninth Circuit have left the door slightly open for language-barrier claims. *See Diaz v. Kelly*, 515 F.3d 149 (2d Cir. 2008); *Mendoza v. Carey*, 449 F.3d 1065 (9th Cir. 2006). But even under the standards in those circuits, a petitioner's language deficiency must be coupled with proof of independent and diligent effort to overcome the prisoner's disabilities by alternative means – circumstances not present here. *See Diaz*, 515 F.3d at 154 (diligence must include an effort to contact someone who speaks his or her language outside the prison to assist, as well as an effort to find assistance within the prison); *Mendoza*, 449 F.3d at 1070 (A petitioner must demonstrate "at a minimum . . . that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure either legal materials in his own language or translation assistance from an inmate, library personnel, or other source.").

Additionally, extraordinary circumstances outside of his control did not prevent Prieto from timely filing his § 2255 petition. First, the fact of a prisoner's incarceration is not an extraordinary circumstance justifying equitable tolling. *Johnson v. McCaughtry*, 265 F.3d 559, 566 (7th Cir. 2001). In any event, as demonstrated above, unlike the petitioner in *Holland*, Prieto could easily have determined the status of his appeal and timely filed his § 2255 petition,

notwithstanding his appellate attorney's alleged failure to communicate. Under these circumstances, a failure to update Prieto about the state of his appeal presents a "garden variety" attorney error, rather than an extraordinary circumstance warranting equitable relief. *See, e.g.*, *Mikel*, 2010 WL 2732758, at *1 (holding that attorney's failure to timely notify petitioner of appellate opinion "presents the type of 'garden variety' attorney negligence that would not warrant tolling"); *Stevens v. United States*, 2010 WL 3447900, at *2 (S.D.N.Y. Sept. 1, 2010) (same); *see also Montenegro*, 248 F.3d at 594 (attorney's nonresponsiveness, prisoner's ignorance of the law, and prisoner's transfer are not extraordinary circumstances tolling § 2255's limitations bar). Therefore, equitable tolling will not save Prieto's untimely § 2255 motion.

Because I am denying Prieto's § 2255 motion, pursuant to Rule 11 of the Rules Governing § 2255 Proceedings, I must issue or deny a certificate of appealability ("COA"). Rule 11(a), Rules Governing Section 2255 Proceedings. In order to issue a COA where the petition was dismissed on procedural grounds without addressing the underlying constitutional claim, I must find: (1) that reasonable jurists would find it debatable whether the procedural ruling was correct and (2) that reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). This is a threshold inquiry, so I need only address one component if that showing will resolve the issue. *Id*. at 485. And I am mindful that courts should resolve procedural issues first if their resolution will avoid the need to address constitutional questions. *Id*.

Here, reasonable jurists would agree that equitable tolling does not excuse Prieto's untimely § 2255 motion. As discussed above, Prieto has failed to pursue his rights diligently, and he has not presented any extraordinary circumstances justifying equitable relief. The facts in

*Holland* are materially different from those here. Thus, I decline to issue a certificate of appealability. If Prieto wishes to appeal this Opinion and Order, he must seek a certificate of appealability from the Court of Appeals under Federal Rule of Appellate Procedure 22.

For the foregoing reasons, Prieto's § 2255 motion is **DENIED** and **DISMISSED** with prejudice. [DE 135.] I **DECLINE** to issue a certificate of appealability. The clerk shall enter final judgment accordingly.

**SO ORDERED**.

ENTERED: January 3, 2012.

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT